The opinion of the Court was delivered by
Darcan, Ch.
Robert M. Allan departed this life, in the year 1839, having duly executed his last Will and Testament, leaving a considerable estate in the State of *13 Mississippi, also, leaving a considerable, though less estate in South Carolina, which was his domicil. Thomas' D. Condy and Richard Allan, (since dead,) two of the Executors named in the Will, proved the same; it was admitted to probate in the Court of Ordinary for Charleston District, in the State of South Carolina. Letters testamentary were granted to Thomas D. Condy and Richard Allan, on the 17th June, 1839, the latter of whom, soon afterwards having departed this life, the said Thomas D. Condy became the sole acting Executor.
In the year 1839, or 1840, Thomas D. Condy obtained letters of Administration of the assets of Robert M. Allan, in the State of Mississippi, and possessed himself of both the real and personal property in that State. The Will of Robert M. Allan gave no power to the Executors to sell the real estate; yet, the said Thomas D. Condy, sold the plantation of the testator in South Carolina. This sale, was subsequently confirmed by this Court. He also sold, all the real and personal estate in the State of Mississippi. It does not appear, that he sold the real estate in that jurisdiction, by any legal authority. He appears to have sold it without authority, but with the consent, and at the request of Andrew C. Turnbull, who held a mortgage of the whole of that property for a large amount. The regularity and validity of the sales made by Condy, are not in question here. The only question as to such sales, now before the Court, is, as to the distribution of the proceeds.
Robert M. Allan was largely indebted, at the time of his death. At first, it was with reason supposed, that his estate would be amply sufficient to pay all his debts. But from subsequent and untoward circumstances, for which Condy does not appear to have been in default, nor in any way responsible, this proved to be a mistake; the estate is largely insolvent.
One of the cases stated in the caption of this opinion is a creditors bill, against Condy, executor of Allan in South Carolina, and administrator in Mississippi, for an account, *14 and to marshal the assets. It is charged against Condy, among other things, that he has committed devastavits, in paying the debts of the insolvent estate out of the order prescribed by law. And this is true, to a large extent, if the South Carolina mode of paying the debts of an insolvent estate, is to be observed in a case like this. The foregoing statement, from a somewhat complicated state of facts, (many of which, are irrelevant to the issue now before the Court,) will be sufficient to a proper apprehension of the question of law raised on this appeal, and now to be decided by the Court.
The laws of South Carolina and Mississippi are different, as to the mode of applying the assets of an insolvent debtor after his death. In the State first named, by the Act of 1789, called the Executors Act, the debts are to be paid in a certain prescribed order, and according to a certain rank and classification therein declared; while in the State of Mississippi under like circumstances, the assets are applied towards the satisfaction of all the debts pro rata, except as to creditors having liens. The question here made is whether the Mississippi assets are to be administered according to the South Carolina or Mississippi mode. The question has never before, (so far as I am informed,) been decided or made in the Courts of this State.
The administration in Mississippi has been completed. The accounts there have been closed. There is no creditor claiming in that jurisdiction. There is a net balance on the administrator’s accounts against him in the Orphans’ or Probate Courts of that State. And all the creditors now claiming, are of this State.
The administration of the foreign estate is ancillary to that of the domicil. In the foreign administration, the law of that jurisdiction is to prevail in the payment of debts due to the citizens of the country, and all others, (I apprehend,) who make their application for payment there. When this is done, and all claims against the foreign administration are satisfied, what *15 remains to be done with the residue ? inasmuch as succession and distribution are governed by the law of the testator’s and intestate’s domicil, what can be done with the balance, but to remit it to the domiciliary and primary administrator, to be dealt with, and disposed of as the law of the domicil directs. When the fund reaches the hands of the primary administrator, it is first subject to the claims of creditors whose claims have not been satisfied in the course of the ancillary administration, and then to the claims of legatees or distributees, as the case may be.
The Court is now acting as well upon the assets that were found at the testator’s death in South Carolina, as upon the balance of assets in Mississippi, on the administration in that State. It is contended that, as the law of the latter State applies the assets of a deceased insolvent to the payment of his debts pro rata, the same rule should prevail here, as to so much of the fund as has been derived thence. But surely, this is a misconception. One of the characteristics of personal estate, (and hence the name,) is, that in legal contemplation, it is supposed to be ever attendant upon the person. In its disposition, whether inter vivos, or by succession, or distribution, the forms required by the law of the proprietor’s domicil are sufficient to pass and transfer it. This rule obtains from the comity of nations and may be said to be almost universal law.
• The law of Mississippi, which I have noticed, by which the assets of a deceased insolvent within that State are applied pro rata among his creditors, without reference to the rules of law on that subject of the testator’s or intestate’s domicil, (or that of other States, or countries, having similar provisions,) are exceptional to the general principles, which apply in the disposition of personal estate. The exception is based upon a good and sufficient reason. It is the right, and duty of every Government, to protect and aid its own citizens in the recovery and enjoyment of their just claims. When an ancillary administration is granted in a foreign State, (in Mississippi, for example,) no comity requires that she should send *16 her citizens into another State to recover payment and satisfaction of their claims out of assets which are now under the jurisdiction of her own Courts; where their remedy would be simple, easy, and comparatively inexpensive. Though her own laws might dispense the assets to the creditors, upon the principles of equality, her citizens after much expense, trouble, and delay, when sent for the recovery of their debts into a foreign jurisdiction, might fail of obtaining satisfaction from inequalities and exclusions in the application of the assets, based upon fanciful and arbitray distinctions that prevail in the laws of the foreign country. It is a better, wiser, and safer rule to require, that all the claims presented against the ancillary administration should be first satisfied, before the fund is sent abroad to the primary administrator. When this is done, and every claim upon the ancillary administration is satisfied, comity steps in, and permits the general principle of international law to prevail, that in the disposition oí personal property, the law of the proprietor’s domicil shall govern. Such is the judgment of the Court, upon this ground of appeal. And it is so ordered and decreed.
As to Miss Bowman’s Appeal, there is some irregularity in the manner in which it has been presented to the Court, and it arises on a point that was not presented to or considered by the Circuit Court. As the adverse counsel interposes no objection, and it manifestly appears that injustice has been done her, the Court will consider her appeal.
Miss Bowman was a creditor of Robert M. Allan, to a large amount, by two several bonds; on one of which bonds is now due (the date of the report^ the sum of $1127 19, and on the other, the sum of $1174 24, both of which were secured by a mortgage of the plantation or tract of land, in Saint Andrew’s Parish, in the State of South Carolina, on which the said Allan lived at the time of his death. This land was sold by the executor, Thomas D. Condy, at public sale. Mrs. Allan became the purchaser, at the bid of $6,050 00. She *17 had a bond debt against the estate of Robert M. Allan for $17,000, unsecured by liens. This sale was confirmed, and as the estate, at that time, was supposed to be perfectly solvent, it was ordered that her bid of $6,050 00 be paid by entering it as a credit, or payment on her bond debt against the estate; and the Commissioner was ordered to execute a title for the plantation to Dr. George Haig, to whom Mrs. Allan had transferred her bid. At the same time, it was ordered, that the Executor should pay Miss Bowman’s claim out of the general assets of the estate in his hands. The estate was then supposed to be solvent. And if this had been the fact, it would all have been well; for it would have been immaterial out of what portion of the estate, Miss Bowman, Mrs. Allan, or any other creditor, would have been paid. But, in consequence of the insolvency, some difficulty has occurred.
It is to be remarked, that by the decree confirming the sale of the plantation on which Miss Bowman held a mortgage, and ordering titles to be made to Dr. George Haig, she was not bound. She was not a party to the cause. Creditors had not then been called in. She was in no wise affected or compromised by the decree. She might have gone on and foreclosed her mortgage, notwithstanding the decree. But to this creditors bill, she is a party. The creditors have all been called; among them, she has appeared, and has proved her debt and mortgage. But the land upon which she had a lien, and priority of claim, by virtue of her mortgage, has been sold under the sanction of the Court, and the proceeds thereof disposed of. And in the distribution which has been reported and recommended to the Court, her claim has been entirely pretermitted, and no provision made for her. That, now, is the ground of her complaint, and her present appeal. It would not rest with her hereafter, to say she was not a party to these proceedings. She is a party, and if some remedy is not now provided for her, she will be concluded hereafter.
The claim of Miss Bowman is obviously meretorious. The *18 Court recognizes the necessity of making some provision for the satisfactiop of her claim. The difficulty is, making a provision which will not come in conflict with some other decre-tal disposition of the assets heretofore made, and which was intended- to be final. Deciding that Miss Bowman’s claim must be paid, the Court, in its ■ own embarrassment on this point, has concluded to refer it to the Master to divise and report the mode. It is accordingly referred to the Master to report a scheme for the payment of Miss Bowman’s debt out of the funds under the control of the Court, and in the event of a deficiency from such funds, that he have leave to report any special matter. '
The Circuit decree is affirmed, except as modified by this decree.
D union and Wardlaw, C C., concurred.

Decree modified.